The opinion of the Court was delivered at November term 1822, by
Parker C. J.
The plaintiffs having shown an act of the legislature incorporating them with authority to build a bridge over Charles River from Boston to Cambridge, and to take toll from all persons who shall pass over the same, would be entitled to recover in the present action, unless, by some act binding on the corporation, they have disabled themselves from exacting it. We think it immaterial whether the defendant passed over the whole, or only a part of the bridge, for the corporation, not being restricted as to the location of their toll-houses, may lawfully demand toll of any one who may pass either of them notwithstanding the passenger may not have entered the bridge at one end and passed off at the other; so *311 that it a person were to go from the ice, or a boat, to the middle of the bridge, and then pass to Cambridge or Boston, there is nothing in the act which will exempt such person from the toll. But it is undoubtedly competent to the proprietors to commute the t j11 for a certain sum by the year or the quarter. This is done by most of such corporations : and they have the same authority to give a free passage, where they shall deem it for their interest; at least the corporation cannot claim against a vote granting such free passage, and if their authority is questioned, it must be by those members of the corporation who do not assent to the act, and are injured by it.
It is true, that the acts, doings and declarations of individual members of the corporation, unsanctioned by the body, are not binding upon it; but it is equally true, that inferences may be drawn from corporate acts, tending to prove a contract or promise, as well as in the case of an individual; and that a vote is not always necessary to establish such contract or promise. This has been settled m several cases in this country and in England.[1]
The defence, therefore, set up in this case, which is, substantially, that the plaintiffs have parted with their right to exact toll from persons who shall pass from Charlestown to Cambridge by the way of the bridge leading from Prison Point in Charlestown, is valid in law, if maintained in point of fact; and we consider it as referred to the Court to decide, whether the evidence used in the case is legally sufficient to warrant a verdict against them on that fact. Some difficulty has arisen in considering this point, from the intricate and complex manner in which the business of three several corporations, which are connected in this inquiry, has been transacted. There *312 seems to have been a combination of interests, whicl. made it difficult for them to maintain a distinct'character ; so that sometimes they met and voted conjointly, and at others seem to have holden separate meetings and kept separate records. We find the proprietors of the bridge, upon some occasions, passing votes respecting the land, and the proprietors of Lechmere Point doing the same thing in relation to the bridge ; and it appears that the whole interest of the Prison Point Dam Corporation was purchased, or otherwise assumed, by the proprietors of Lechmere Point. This confusion resulted from the circumstance, that the same individuals were members of all the corporations, and that their corporate interest, which was at first distinct, had become identified by the equalization of shares in the several companies, and the obligation imposed by the votes of each that they should always be kept or transferred together.
There are no doubt technical difficulties in considering these several companies as copartners, or as having blended their powers and interests together, so that whatever should have been done by one, should be binding upon the others ; and yet, as they are all composed of the same individuals, using several corporate powers for the same end and purpose, with nothing but the form of a record to distinguish them, equity would seem to require that they should not have the power of severing to the prejudice of any persons with whom either might contract. But as the Court is bound, in a suit at common law, to observe the rules of that law, we have, in the discussion of the case, considered the three corporations as distinct legal persons, and endeavoured to ascertain the rights of the parties in this view only ; without reference to the singular combination, which has without doubt occasioned some difficulty to those who unfortunately adopted this mode of carrying "nto effect their intentions.
The statement of the defendant is, that by virtue of the several acts of incorporation referred to in the case, and the corporate acts and proceedings of the several companies constituted by them, that part of the Canal Bridge, which leads from the place of the junction of the cross bridge, has virtually become a part of the dam which was authorized by the act in *313 corporating the Prison Point Dam Corporation ; and that, as by virtue of that act no toll was authorized for the passing of the dam, the proprietors of the bridge have voluntarily, and for a sufficient consideration, abandoned the right to take toll from those who should come by that route over their bridge. There being no legal impediment to the proprietors of the bridge making such a bargain, it is rather a question of fact, whether it has been made ; and the only view in which we can entertain this question is, whether the evidence in the case is legally sufficient to maintain the defendant’s position.
The act incorporating the Prison Point Dam Corporation was passed in 1806, before either of the other corporations was created ; but we have no evidence that the act was put in operation, to any purpose, until after the existence of the other corporations. Under this act, the corporation was authorized to build a dam from Prison Point, in Charlestown, to Lech-mere Point, in Cambridge. It would seem, by the provisions in the act, that the principal object was the erection of mills ; but the dam was also intended to be used as a road, since it was required, that there should be a railing and lights, and the width was to be such as could only be necessary for a road. No toll whatever was established for passing this road, the legislature probably considering that the great water privilege given, and the probable profits of the works upon the dam, would be a sufficient compensation for the expense of making and maintaining a passage over the surface.
In 1808, Andrew Craigie and others were incorporated as the Proprietors of the Canal Bridge, to be extended from Boston to the same Lechmere Point. And, in 1810, the proprietors of land on Lechmere Point were also incorporated, with the right to hold their land in shares, and transfer the same as personal property.
This latter corporation, or its members, became the owners of all the shares in the Prison Point Dam Corporation ; and, in 1815 and 1816, erected a bridge from Prison Point to the Canal Bridge, at the distance of 780 feet from the upland of Lechmere Point. This must be considered as done by the corporation, because they appointed committees to locate the bridge, and declared that they had assumed all the shares, and *314 the presumption is, nothing being shown to thé contrary, that the expense was paid from the corporate funds.
It is proper here to inquire, whether this bridge was built by virtue or under color of the act establishing the Prison Point Dam Corporation, or avowedly without any authority, by persons professing to act as trespassers or violators of the public right of passage over navigable waters. And we cannot do the injustice to the corporation, or the respectable individuals' composing it, to hesitate a moment in believing that they intended, as they professed, to act under authority of the legislature. Their acts and declarations show it. They purchased up the right under the act of incorporation, and all their proceedings of record have reference to the authority thereby given ; and they made provision in their stipulation with the Proprietors of the Canal Bridge, to turn a part of that bridge into a dam upon some future opportunity. It is true, that they have not built a close dam, and that the purposes for which the authority was given appear not to be executed ; but we apprehend they will not say, they never intended to make a dam, and if they should, we apprehend the law will not allow them to hold that language. • It ought to be supposed, that what they have done is with a view to a future full compliance with the terms of the charter under which they acted, and that they relied upon the indulgence of the government for a temporary suspension of the public projects which they have begun. Either this is their intention, or they must be supposed to have occupied a public privilege and converted it to their private purposes, without any authority or pretence of right whatever. Assuming it, then, as a point established, that the proprietors of Lechmere Point erected the cross bridge under and by virtue of the legislative act, it is clear, that they have no authority to establish a toll; and they have not pretended to demand one ; which is another reason for believing, that what they did was under color of the act.
But they had no right to join their bridge or dam to the Canal Bridge, without the consent of the proprietors of that bridge ; and if they had done so, without doubt all who should pass on to the bridge and cross it for the purpose of going to Cambridge would be liable to toll; and even with this con-, *315 Bent, unless the proprietors of the bridge had made some contract winch would legally deprive them of this right.
Have, then, the proprietors of the bridge done any act, which can legally operate to deprive them of the right to exact toll of the passengers from Charlestown to Cambridge or Cambridge to Charlestown ?
In August 1814, the proprietors of Lechmere Point voted, that, having assumed all the shares in the Prison Point Dam Corporation, and being at the whole expense of building and keeping in repair said dam, agreeably to the act of incorporation, the free use of said dam be granted to the Proprietors of Canal Bridge, for passing and repassing to and from Charles-town ; provided, that the said Proprietors of Canal Bridge give to the proprietors of Lechmere Point and Prison Point Dam the use of that part of Canal Bridge extending from the dam to Lechmere Point, and keep the same always in repair, and provided, also, that permission be given to the Lechmere Point and Prison Point Dam proprietors to cause that part of the bridge to be so filled up as to make it a solid dam, whenever they shall think it expedient.
Here was a direct and plain proposition, and if it had been met by as plain an acceptance by vote recorded, no one would imagine that any question could arise as to the effect. One corporation, having a lawful right to build a dam, proposes to another to make part of their bridge into a dam, and that par ty accepts it. Surely, if they act as separate and independent bodies, they are both bound by the contract, and a legal remedy would be found for the violation of it. The consequence would be, that to all intents and purposes the part of the bridge so occupied would become a part of the dam ; and if any citizen would have a right to pass over the dam, he would have the same right to pass over the bridge thus appropriated.
The question, then, is narrowed to this, — Have the Proprietors of the Canal Bridge assented to this proposition and acted under it ? We find no vote to this effect, but we do find, that the cross bridge was suffered to unite with theirs pursuant to the proposition, and that for four years, all were suffered to pass without toll who came from Charlestown to Cambridge, or vice versa. Now, corporations can be bound by implicaron, *316 -as well as individuals, as has been before stated, and no acts could be stronger to show an assent to a proposition, an agreement or bargain, than those which have been mentioned.
We account for there being no express vote, only from the mixed interests of these corporations, and their being composed of the same individuals. We find the proprietors of the bridge appropriating 10,000 dollars to the erection of houses on the Point, and the proprietors of the Point exempting from toll persons passing over their bridge. They are one and the same in interest, and, although we were not permitted to consider them so in point of form, the evidence result ing from the acts of each cannot but have an influence on any question relating to their transactions. The proprietors of the bridge have sold a part of their bridge to the proprietors of Lechmere Point, to be used as a dam, and the proprietors of the dam, or of the Point, have sold to the proprietors of the bridge the use of the dam. Acting under statutes of the government, they must be bound by them ; their rights must be ascertained by their charter ; and considering the charter to the Prison Point Dam Corporation as granting no right to toll, and that the westerly end of the Canal Bridge is virtually a part of the dam, we think it clear that those who pass from Cambridge to Charlestown, or Charlestown to Cambridge, by way of the cross bridge or dam, are legally subject to no toll.

Verdict set aside and-a general verdict entered for the defendant.

 Episcopal Charitable Soc. v. Episcopal Church in Dedham, post, 372; Smith v. Propr’s of F. C. M. H. in Lowell, 8 Pick. 178; New Eng. M. Ins. Co. v. De Wolf, 8 Pick. 56; Mott v. Hicks, 1 Cowen, 532; Danforth v. Schoharie Turnp. Co. 12 Johns. R. 227; Dunn v. St. Andrew's Church, 14 Johns. R. 118; Chestnut Hill Turnp. Co. v. Rutter, 4 Serg. & R. 16; Bank of Northern Liberties v Cresson, 12 Serg. & R. 312; Bank of U. States v. Dandridge, 12 Wheaton, 64; Eastman v. Coos Bank, 1 N. Hamp. R. 26; Baptist Church v. Mulford, 3 Hal sted, 182; Union Bank of Maryland v. Ridgely, 1 Har. & Gill, 426; Angell & Ames on Corp. 128, note (1). See White v. Westport Cotton M. Co., ante, 215; Frankfort Bank v. Anderson, 3 Marshall, 1.